# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Russell Lee Garner,

      Petitioner,

v.

Brian Williams, et al.,

      Respondents.

2:15-cv-00516-JAD-PAL

**Order Denying Petition for
Writ of Habeas Corpus**

Petitioner Russell Lee Garner, a prisoner in the custody of the State of Nevada, brings this habeas action under 28 U.S.C. § 2254 to challenge his 2010 convictions for burglary, possession of a credit or debit card without the cardholder's consent, and possession or sale of a document or personal identifying information to establish false status or identity. After evaluating his claims on their merits, I deny Garner's petition for a writ of habeas corpus, dismiss this action with prejudice, and deny a certificate of appealability.

## I. Background

The State charged Russell Lee Garner, in its amended information, with five felonies: burglary (count 1), possession of a credit or debit card without the cardholder's consent (counts 2 and 5), and two counts of possession or sale of a document or personal identifying information to establish false status or identity (counts 3 and 4).[1] The morning before trial began, the State dropped count 2.[2] On October 7, 2010, at the conclusion of a three-day jury trial, the jury returned a guilty verdict on the four remaining counts.[3] The state trial court sentenced Garner to concurrent terms of

---

[1] ECF No. 14-9; *see* Nev. Rev. Stat. §§ 205.060, 205.465, 205.690. My page citations to the record are to the page numbers of the native documents, except for ECF Nos. 6 and 18-1, for which page citations are to the ECF-generated page numbers.

[2] ECF No. 14-13 at 4.

[3] ECF No. 15-5; *see* ECF Nos. 14-13, 14-14, 15-1 (trial transcripts).

imprisonment of 10 to 25 years for each count.[4]

Garner appealed on June 2, 2011.[5] The Supreme Court of Nevada affirmed on January 12, 2012, with remittitur issuing on February 27, 2012.[6] Garner filed his petition for a writ of habeas corpus with the state district court on July 5, 2012.[7] On July 31, 2013, the state district court ordered an evidentiary hearing on Garner's claims that counsel was ineffective for failing to challenge the justice of the peace's probable-cause determination, that trial counsel was ineffective for failing to investigate and call witnesses on behalf of Garner, and that trial counsel was ineffective for failing to request that Garner be remanded to custody prior to trial.[8] After an evidentiary hearing on January 10, 2014, the court denied the petition on February 28, 2014.[9]

On June 27, 2014, Garner appealed to the Supreme Court of Nevada.[10] On January 8, 2015, the Supreme Court of Nevada assigned the appeal to the Court of Appeals of Nevada for disposition.[11] The Court of Appeals of Nevada affirmed on February 5, 2015, and remittitur issued on March 17, 2015.[12]

Garner filed his federal petition for a writ of habeas corpus on June 1, 2015.[13] The State filed

---

[4] ECF No. 15-7 at 10; *see also* ECF No. 15-12 (amended judgment of conviction).

[5] ECF No. 16-1; *see also* ECF No. 16-3 (reply); ECF Nos. 16-4, 16-5 (supplements).

[6] ECF No. 6 at 83–86; ECF No. 16-8.

[7] ECF No. 16-13; *see also* ECF Nos. 16-15, 16-17, 17-2, 17-3 (memoranda in support).

[8] ECF No. 17-6 at 6; ECF No. 18-1 at 71–72. These three claims are presented in Garner's federal petition, and I address them below as Grounds 3-1, 3-3, and 3-8.

[9] *See* ECF No. 17-7 at 1, 15; *see* ECF No. 18-1 at 74.

[10] ECF No. 18-3.

[11] ECF No. 18-5.

[12] ECF Nos. 18-6, 18-7.

[13] ECF No. 6.

its answer on November 17, 2015,[14] and Garner filed a reply on February 24, 2016.[15]

## II.    Standard of review

When a state court has adjudicated a claim on its merits, the Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating the state court ruling; that standard is "difficult to meet" and "demands that state-court decisions be given the benefit of the doubt."[16]  Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that the state court decision was incorrect.[17]  Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.[18]  The petitioner bears the burden of proving that he is entitled to habeas relief.[19]

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result.[20]  A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions.[21]  The Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor

---

[14] ECF No. 13.

[15] ECF No. 21.

[16] *Cullen v. Pinholster*, 563 U.S. 170 (2011).

[17] *Id.* at 202.

[18] *Id.* at 181–88.

[19] *Id.* at 181.

[20] *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003).

[21] *Id.*

3

the result of its decision contradicts them.[22]  And "a federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous."[23]  A decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable."[24]  When a state court's factual findings are challenged, the "unreasonable determination of fact" clause of 28 U.S.C. § 2254(d)(2) controls,[25] which requires federal courts to be "particularly deferential" to state court factual determinations.[26]  This standard is not satisfied by a mere showing that the state court finding was "clearly erroneous."[27]  Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision.  Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.[28]

### III.   Discussion

In a petition that brings to mind a partridge in pear tree, turtle doves, and French hens, Garner raises four grounds for relief: one violation of his Fourth Amendment rights against search and

---

[22] *Id.*

[23] *Id.* at 16.

[24] *See, e.g.*, *id.* at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

[25] *See, e.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004).

[26] *Id.*

[27] *Id.* at 973.

[28] *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

4

seizure,[29] five violations of his Fifth and Fourteenth Amendment rights to due process,[30] twelve violations of his Sixth Amendment right to the effective assistance of counsel,[31] and one violation of his Sixth Amendment right to confront witnesses against him.[32] But Christmas will not come early for Garner because he presents no grounds with any worthwhile content, and I deny his petition.

## A. Ground 1

In Ground 1, Garner argues that this Fourth Amendment rights were violated because evidence that the State introduced at trial was found after he was arrested by Detective Ferron—an arrest that he claims lacked probable cause.[33] However, the Supreme Court has long held that, when "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."[34] Therefore, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."[35]

Garner argues that the state trial court got it wrong, and that it should have realized that even the State acknowledged that the evidence was insufficient to support a probable-cause determination and therefore granted his motion to suppress the evidence under the exclusionary rule. I need not

---

[29] ECF No. 6 at 3; *see also id.* at 17–22.

[30] *Id.* at 5; *see also id.* at 22–30, 79–80.

[31] *Id.* at 7; *see also id.* at 44–74.

[32] *Id.* at 9; *see also id.* at 77–79.

[33] *Id.* at 3; *see also id.* at 17–22.

[34] *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Kimmelman v. Morrison*, 477 U.S. 365, 375–76 (1986).

[35] *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 898 (9th Cir. 1996). At one time there might have been a question as to whether this rule survived the enactment of AEDPA, but that is no longer in doubt. *Newman v. Wengler*, 790 F.3d 876, 878–80 (9th Cir. 2015) (per curiam); *see also Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002); *Herrera v. Lemaster*, 225 F.3d 1176, 1178 & n.2 (10th Cir. 2000).

determine if this is a correct characterization of the record because "[t]his is not [the] standard."[36]
"All [that is required] is the initial opportunity for a fair hearing. Such an opportunity for a fair hearing foreclose's [a habeas] inquiry . . . ."[37] Because Garner "does not argue that his initial hearings were not fair, but rather only that they were wrongly decided," all he presents is "a claim of error—and that is not enough to support [habeas] relief based on the exclusionary rule."[38]

Even if Garner had claimed that the three proceedings in which he raised the motion were not fair, that claim would be belied by the record. When Garner initially raised this claim at his preliminary hearing, he was precluded from litigating it because he failed to comply with a Nevada law that required that the motion be made in writing before the hearing.[39] But his procedural error did not end the discussion. Garner filed a written motion before the state district court.[40] The State filed a response, and the court held a hearing on the matter.[41] At that hearing, Garner presented his argument.[42] After the State responded, Garner was again afforded the opportunity to argue.[43] When Garner made a logical inference that the trial court did not agree with, the court explained why it disagreed.[44] Garner and the State went back and forth again.[45]

And when the court ultimately denied Garner's motion to suppress because it believed that there was probable cause to arrest Garner, he requested that the court put its ruling in writing.[46]

---

[36] *Newman*, 790 F.3d at 881.

[37] *Caldwell v. Cupp*, 781 F.2d 714, 714 (9th Cir. 1986).

[38] *Newman*, 790 F.3d at 881 (quoting *Hampton*, 296 F.3d at 565).

[39] *See* ECF No. 14-1 at 38.

[40] ECF No. 14-10.

[41] *See* ECF No. 14-12 at 1.

[42] *Id.* at 2–8.

[43] *Id.* at 9.

[44] *See id.*

[45] *Id.* at 10–11.

[46] *Id.* at 11–12.

While it is unclear if the court ever did so, Garner renewed his motion, and he was allowed to

explain himself. When the State announced that it was dropping count 2,[47] Garner and the State

went back and forth, with the court interjecting, and again the court agreed that there was probable

cause.[48] After Ferron testified at trial, Garner again renewed his motion to suppress.[49] He was

allowed to make his argument, the State responded, and the court ordered a fourteen-minute recess to

further analyze the question.[50] When the proceedings resumed, the court again denied the motion to

suppress and again explained its reasons.[51] Garner raised this issue on appeal, and the Supreme

Court of Nevada rejected it on its merits.[52] It is beyond dispute that Garner had a full and fair

hearing.

Ground 1 provides no basis for habeas relief.

**B.     Ground 2**

In Ground 2, Garner claims that five violations of his Fifth and Fourteenth Amendment rights

to due process warrant habeas relief.[53]

**1.     Ground 2-1**

Garner argues that the "trial court erred when it denied [his] motion for a mistrial, thereby

denying him his constitutionally guaranteed rights to due process."[54] He reasons that the

"accumulation of repetitive testimony offered from [police witnesses] constituted improper character

evidence and evidence of prior bad acts."[55] The Supreme Court of Nevada rejected this claim

---

[47] ECF No. 14-13 at 4–5.

[48] *Id.* at 6–10.

[49] ECF No. 14-14 at 48.

[50] *See id.* at 48–51.

[51] *Id.* at 51.

[52] *See* ECF No. 6 at 83–84.

[53] *Id.* at 5; *see also id.* at 22–30, 79–80.

[54] *Id.* at 22.

[55] *Id.*

because the references were not so "clearly and enduringly prejudicial" that a mistrial was required, "especially in light of the substantial evidence of guilt."[56]

The federal courts "are not a state supreme court of errors; we do not review questions of state evidence law."[57]  Instead, the federal courts on habeas review care only "whether the admission of the evidence so fundamentally infected the proceedings as to render them fundamentally unfair," and thus constitutionally problematic.[58]  Not only must there be "*no* permissible inference the jury may draw from the evidence," but also the evidence must "be of such quality as necessarily prevents a fair trial."[59]  In other words, the evidence is not constitutionally suspect unless it is irrelevant and has no probative value.[60]  Whether the admission of evidence violated state law "is no part of a federal court's habeas review of a state conviction."[61]

Even assuming that the Supreme Court of Nevada did not address whether the admission of this evidence violated the U.S. Constitution and the claim was thus subject to de novo review, the claim fails.  Garner complains that the officers' testimony created a perception to the jury that the whole team had been assembled to follow Garner around that day prior to any suspicious activity, thus making it seem like he must be a criminal—akin to bad acts testimony.

At trial, Detective Ferron testified, "When I came upon [Garner], I had followed him into a store."[62]  Officer Faller testified that after he had "taken up surveillance" and followed Garner to a gas station—after the grocery store—he arrested Garner because Ferron said that she had probable cause.[63]  Officer Hirschi testified that he showed up after he "received information over [his] Nextel

---

[56] *Id.* at 84.

[57] *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

[58] *Id.*

[59] *Id.* at 920 (citation omitted); *see also Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998).

[60] *See Estelle v. McGuire*, 502 U.S. 62, 68–69 (1991).

[61] *Id.* at 67.

[62] ECF No. 14-14 at 38.

[63] *Id.* at 52–53.

phone that a subject known to [him] as Russell Garner had gone into a grocery store and . . . used a fake identification and a fraudulent credit card."[64]  Another officer testified that he "responded to the area" after Garner was in custody, and another said no more than that he was "involved in the arrest of Russell Garner that day."[65]

At the conclusion of this testimony, Garner moved for a mistrial, claiming that contrary to an earlier agreement, the State elicited testimony that all but one of the police witnesses testified that "this was a team or group operation.  We've heard testimony that they had to formulate a plan amongst themselves to take Mr. Garner into custody.  We've heard they were conducting team surveillance aimed at Mr. Garner . . . ."[66]  The State objected to Garner's characterization of the testimony—and rightfully so.  The only "group effort" that came out was *after* Ferron notified the other officers that she had probable cause—there was no indication that the other officers were already on the scene waiting.  Instead, the best reading of the record is that the officers responded to Ferron's call and then followed Garner briefly before arresting him.  Such testimony certainly does not violate due process nor could it have prejudiced Garner in any way.

The only testimony that Garner points to that might have some semblance to prior bad acts is that of Detective Ferron, who said that she "had followed [Garner] into the store," where she then observed him make the fraudulent transactions.[67]  This isolated testimony was such an off-hand reference to the type of bad acts material that Garner claims violated his constitutional rights that it could not have prejudiced him.  More importantly, though, there was at least one "permissible purpose"—in a U.S. Constitution sense, not in a state-evidence-rule sense—for the testimony: it explained how Ferron happened to be at that store and why she was paying attention to Garner's transaction.  After all, if she had to claim that she just happened to get in line behind Garner and then just happened to ask the employees at the store what card he paid with and what name was on it, a

---

[64] *Id.* at 61.

[65] *Id.* at 14-14 at 66, 76.

[66] *Id.* at 80–81.

[67] *Id.* at 38.

juror might well doubt her credibility. And even if the testimony was not permissible for any purpose, it was still too minor to have rendered the trial "fundamentally unfair."

Ground 2-1 provides no basis for habeas relief.

### 2. Ground 2-2

Garner argues that there was "insufficient evidence produced at trial to sustain convictions against [him] on counts 2 and 4" in violation of his Fifth and Fourteenth Amendment rights to due process.[68] This argument hinges on *Jackson v. Virginia*, in which the Supreme Court held that a conviction comports with due process only if, viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found essential elements of the crime beyond a reasonable doubt."[69] The Supreme Court of Nevada cited this standard and held that Garner did not meet it.[70] Therefore, on federal habeas review, I combine the deferential standards of *Jackson* with the deferential standards of AEDPA to approach the claim that the court got it wrong with a "double layer of deference."[71] Garner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."[72]

In relevant part, the state-law bases for grounds 2 and 4 required the State to prove that Garner either with the intent to defraud, use a credit card or debit card to obtain goods without the cardholder's consent.[73] Garner argues that "[n]o cardholder was produced at trial to meet that element of the charged crime."[74] Indeed, the State did not call one of the two cardholders to the stand to testify that he did not have that cardholder's consent. But it did not need to do so in order to allow any rational fact-finder to find that Garner was using cards without the cardholders' consent.

---

[68] ECF No. 6 at 26.

[69] 443 U.S. 307, 319 (1979).

[70] ECF No. 6 at 84–85.

[71] *Smith v. Mitchell*, 624 F.3d 1235, 1239 (9th Cir. 2010).

[72] *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

[73] *See* Nev. Rev. Stat. §§ 205.465, 205.760; ECF No. 15-12 at 1.

[74] ECF No. 6 at 26.

A manager at Smith's testified that because the card that Garner provided did not scan properly, she was called over to check his ID and write down the ID number before allowing the transaction to go through.[75] She testified that the name on the ID matched the name on the card that he presented—"Matthew Kessler"—and that the picture matched that of the defendant—Russell Garner.[76] Officers testified that when Garner was arrested, he had a fake Nevada driver's license, a fake Visa gift card, and a fake American Express card, all in the name of a "Matthew Kessler."[77] And when an officer called the credit card companies to see whose account the card truly belonged to, it was neither Kessler's nor Garner's—a fact that representatives from both credit card companies testified to.[78] A rational fact-finder could have found, beyond a reasonable doubt, that Garner did not have the cardholder's permission.

Indeed, Nevada law requires the jury to start with the presumption if it found that Garner possessed two cards in the name of another, as it easily could have.[79] Based on this evidence, the Supreme Court of Nevada's determination that a rational fact-finder could have found that Garner did not have the cardholder's consent did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, clearly established U.S. Supreme Court law.

Garner also claims that the State's failure to put one of the cardholders on the witness stand violated his Sixth Amendment right to confront the witnesses against him.[80] This is not a thing. No court of which I am aware has ever held that the Confrontation Clause is violated when a witness is not called and no statement by the uncalled witness is let into evidence. That is not how the Confrontation Clause operates.

Ground 2-2 provides no basis for habeas relief.

---

[75] *See* ECF No. 14-14 at 32.

[76] *Id.* at 32–34.

[77] ECF No. 14-14 at 70–71, 73.

[78] *See id.* at 76–77; ECF No. 15-1 at 41–71.

[79] Nev. Rev. Stat. § 205.465(3); *see id.* § 205.760(1) (citing *id.* § 205.690); *see also id.* § 205.690(3).

[80] ECF No. 21 at 5.

### 3. Ground 2-3

Garner argues that the state trial court refused "to give jury instructions offered by Mr. Garner" in violation of his Fifth and Fourteenth Amendment rights to due process.[81] In essence, Garner wanted negatively phrased jury instructions, but the state trial court went with positively phrased ones in a few places. Even if this were erroneous and even if it were constitutionally erroneous, Garner is entitled to relief only if he demonstrates that "the error 'had substantial and injurious effect or influence in determining the jury's verdict.'"[82] If a court believes, "with fair assurance, . . . that the judgment was not substantially swayed by the error," then habeas relief is not warranted.[83] Importantly, though, the question is not "merely whether there was enough [evidence] to support the result . . . . It is rather, even so, whether the error itself had substantial influence."[84] If a court is left in "virtual equipoise," then it must grant relief.[85]

The Supreme Court of Nevada denied the claim and held that because the substance of the proposed instructions was covered by other instructions and substantial evidence of guilt supports each of his convictions, "any error did not substantially affect the jury's verdict."[86] Without according any deference to this determination, I agree with it.[87] The difference between the positively phrased jury instructions and the negatively phrased jury instructions is trivial, especially in light of the other jury instructions that make clear that the State had the burden to prove all

---

[81] ECF No. 6 at 27.

[82] *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see Dixon v. Williams*, 750 F.3d 1027, 1034 (9th Cir. 2014).

[83] *Dixon*, 750 F.3d at 1034 (citation omitted).

[84] *Id.* (citation omitted).

[85] *Id.* (citation omitted).

[86] ECF No. 6 at 85.

[87] *See Dixon*, 750 F.3d at 1035 ("[C]ourts apply the *Brecht* test without regard for the state court's harmlessness determination." (citation omitted)).

elements beyond a reasonable doubt and the overwhelming evidence against Garner.[88]

Ground 2-3 provides no basis for habeas relief.

### 4. Ground 2-4

Garner again argues that the state trial court refused "to give jury instructions offered by Mr. Garner" in violation of his Fifth and Fourteenth Amendment rights to due process.[89] This time, he objects to the fact that the court rejected Garner's offered "jury instructions that provided the definition of personal identifying information associated with possession of [a] credit card without [the] cardholder's consent."[90] However, when the court asked the State and Garner about the proposed instructions, everyone came to an agreement on this instruction.[91] Garner fails to explain what difference, if any, exists between the content of his proposal and the content of the modified instruction.

Moreover, the State was required only to show that Garner possessed a document *or* personal identifying information to establish a false identity.[92] It proceeded on the document theory at trial—specifically, a driver's license. Therefore, under any standard of review or analysis, the failure to define an unused part of the statute exactly in the manner in which Garner wanted it did not affect the verdict.

Ground 2-4 provides no basis for habeas relief.

### 5. Ground 2-5

Garner argues that the trial court's failure to individually poll Juror 5, even though all other jurors were individually polled as he requested, "rendered the trial unfair" in violation of his Fifth

---

[88] *See, e.g.*, ECF No. 15-2 at 7 ("If you have a reasonable doubt as to the guilt of the Defendant, he is entitled to a verdict of not guilty."); *id.* at 8 ("[A]dopt the interpretation [of evidence] which points to the defendant's innocence and reject the other which points to his guilt.").

[89] ECF No. 6 at 29.

[90] *Id.*; *see also* ECF No. 15-1 at 16–19.

[91] ECF No. 15-1 at 19–20.

[92] ECF No. 6 at 4; *see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

and Fourteenth Amendment due process rights.[93]  As discussed above, federal habeas courts do not correct errors of state law unless they are of constitutional import.  The right to poll the jury (to ensure a unanimous decision or for any other reason), though, is entirely a statutory creation and not of constitutional dimension.[94]  In fact, a defendant does not even have the right to poll the jury to protect his right against being put in double jeopardy prior to a mistrial being declared.[95]  Therefore, a poll of all but one of Garner's jurors does not violate his due process rights or warrant habeas relief.  Indeed, the Eleventh Circuit denied a habeas petition when a state court polled all but one member of the jury because it "kn[e]w of no constitutional right to have a poll conducted."[96]  Moreover, the entire jury here was polled all together, and they collectively indicated agreement with the verdict.[97]  And because no objection was lodged at trial, this claim is reviewed for plain error, the standards of which are clearly not met here.[98]

Even if this constitutional right existed as Garner alleges, Garner fails to demonstrate, or even allege, any sort of prejudice from Juror 5 not being polled—and I am unable to find a hint of it, either.  So Ground 2-5 provides no basis for habeas relief.

## C.      Ground 3

In Ground 3, Garner argues that his trial and appellate counsel were ineffective for twelve reasons in violation of his Sixth Amendment rights.[99]  To succeed on a typical ineffective-assistance-

---

[93] ECF No. 6 at 5, 79.

[94] See, e.g., United States v. Miller, 59 F.3d 417, 419 (3d Cir. 1995); United States v. Shepherd, 576 F.2d 719, 724 (7th Cir. 1978); cf. Humphries v. District of Columbia, 174 U.S. 190, 195 (1889) ("Can it be that, after each of the jurors has signed the verdict, and after it has been returned, and each is present, ready to respond to a poll, the mere inability to complete the poll and make a personal appeal to each renders the entire proceedings of the trial void?  We are unable to assent to such a conclusion.").

[95] See Harrison v. Gillespie, 640 F.3d 888, 901–03 (9th Cir. 2011) (en banc).

[96] Cabberiza v. Moore, 217 F.3d 1329, 1336–37 (11th Cir. 2000).

[97] ECF No. 15-1 at 108.

[98] See United States v. Lindsey, 634 F.3d 541, 554–55 (9th Cir. 2011); Lamb v. State, 251 P.3d 700, 703 (Nev. 2011).

[99] ECF No. 6 at 7; see also id. at 44–74.

of-counsel claim on direct appeal, a defendant must show that counsel's representation fell below an objective standard of reasonableness and a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."[100]  Courts evaluate a counsel's performance from counsel's perspective at the time and begin with a strong presumption that counsel's conduct fell within the wide range of reasonable conduct.[101]  When a state court has reviewed the claim, a federal court's habeas review is "doubly deferential"—the reviewing court must take a "highly deferential" look at counsel's performance through the also "highly deferential" lens of § 2254(d).[102]

### 1. Ground 3-1

Garner argues that trial counsel was ineffective for "failing to file a petition for a writ of habeas corpus to challenge the" probable cause findings at the preliminary hearing.[103]  The Court of Appeals of Nevada rejected this claim because Garner failed to demonstrate either deficiency or prejudice.[104]  The evidence adduced at the preliminary hearing was substantially identical to that produced at trial, which, as described above, was more than adequate to establish that Garner was guilty.  The lessened standards by which the State needs to establish probable cause certainly were met,[105] and thus any challenge would have been pointless.

Ground 3-1 provides no basis for habeas relief.

### 2. Ground 3-2

Garner argues that trial counsel was ineffective for "failing to file a written opposition to the

---

[100] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[101] *See, e.g.*, *Beardslee v. Woodford*, 358 F.3d 560, 569 (9th Cir. 2004).

[102] *Pinholster*, 563 U.S. at 190, 202.

[103] ECF No. 6 at 44.

[104] ECF No. 18-6 at 3.

[105] *See Sherriff v. Hodes*, 606 P.2d 178, 180 (Nev. 1980) (noting that even "marginal" evidence is enough to support a finding of probable cause to bind someone over for trial).

motion to consolidate cases."[106]  Trial counsel objected orally, but that wasn't enough for Garner, apparently.[107]  The Court of Appeals of Nevada rejected this claim because Garner failed to demonstrate either deficiency or prejudice.[108]  Indeed, as described above, the charges that were joined together—possession of a debit card without the cardholder's consent and the possession of a document to establish false identity—were part of the same scheme.  This easily satisfies the Nevada standard.[109]  Garner thus cannot establish either prejudice from his counsel's decision to object orally rather than in writing to the joinder of his case or that doing so was deficient.

Ground 3-2 provides no basis for habeas relief.

**3.      Ground 3-3**

Garner argues that trial counsel was ineffective for "failing to investigate or call witnesses on behalf of Mr. Garner."[110]  Garner argues that his counsel "did not interview any witnesses, including Matthew Kessler and Tina Musser.  Mr. Garner asserts throughout his communications with trial counsel, he advised them that he bought the Visa Gift Card from Matthew Kessler for a discounted price and Tina Musser was present during the transaction."[111]  The Court of Appeals of Nevada rejected this claim because Garner failed to demonstrate either deficiency or prejudice in light of counsel's testimony "at the evidentiary hearing that the defense team investigated potential witnesses and that [Garner] had informed him that one of the alleged witnesses was fictitious."[112]

The State did not provide me with the transcripts from the evidentiary hearing.  The transcripts appear to have been in the appendix submitted to the Supreme Court of Nevada—and

---

[106] ECF No. 6 at 46.

[107] *See id.* at 47.

[108] ECF No. 18-6 at 3.

[109] *See* Nev. Rev. Stat. § 173.115(2).

[110] ECF No. 6 at 50.

[111] *Id.*

[112] ECF No. 18-6 at 3.

therefore sent to the Court of Appeals of Nevada.[113]  The State noted that it did not provide me with the appendix because it was unable to obtain it, but the State did not mention its failure to provide the transcripts of the evidentiary hearing.[114]

If the Court of Appeals of Nevada's recitation of the relevant facts is correct, then Garner is likely not entitled to habeas relief.  But "if the role of a federal habeas court were simply to accept on faith the state court's description of the facts, free from any obligation to review the record on which the state court based its judgment, 'there would hardly be a reason to have a federal habeas statute at all.'"[115]  Just because a petition is likely without merit, that "cannot be said with certainty without a review of the record."[116]  Thus, the Ninth Circuit held in *Nasby v. McDaniel* that when the contents of a transcript that were relied upon by the state court whose decision is under review and are "relevant to the [federal court's] adjudication of [the petitioner's] claims," there is "no alternative" but to review the transcripts or conduct a new evidentiary hearing.[117]  Without the transcripts from the evidentiary hearing, I ordinarily could not determine if the Court of Appeals of Nevada's determination was an unreasonable determination of fact or contrary to, or an unreasonable application of, clearly established U.S. Supreme Court case law.  But this is far from the ordinary case of ineffective assistance of counsel.  And in cases such as this—where I am able to, after taking all of the petitioner's allegations as true, conclude that the petitioner is not entitled to habeas relief—I do not read *Nasby* to require me to sit on my hands and leave the petitioner in needless

---

[113] *See* ECF No. 6 at 51 (citing the appendix for the evidentiary hearing).

[114] *See* ECF No. 13 at 7 n.1.  The State similarly failed to provide the transcript of the December 28, 2010, hearing where this was partially discussed.  *See* ECF No. 6 at 62.  Unrelated to this ground, I will also note that the State failed to provide me with the Supreme Court of Nevada's affirmance of Garner's conviction on direct appeal, electing instead to provide me with the one-page entry of judgment.  *See* ECF No. 16-8.  However, Garner provided the affirmance in his petition.  *See* ECF No. 6 at 83–86.

[115] *Nasby v. McDaniel*, 853 F.3d 1049, 1052 (9th Cir. 2017) (citation omitted); *see also id.* at 1054 ("Regardless of what documents the parties originally submit, it is the district court's independent obligation to obtain the relevant portions of the record.").

[116] *Turner v. Chavez*, 586 F.2d 111, 112 (9th Cir. 1978).

[117] *Nasby*, 853 F.3d at 1053 (quoting *Jones v. Wood*, 114 F.3d 1001, 1008 (9th Cir. 1997)).

doubt while the State sends me the transcripts. In the *Nasby* sense, then, the transcripts are not "relevant" to my adjudication of his claims.

I will note that I am not alone in this reading of *Nasby*—indeed, another judge of this court similarly was not provided with transcripts of an evidentiary hearing relied on by the relevant state court decision and concluded that she nonetheless could dismiss the petition without the transcripts after taking the petitioner's allegations as true because they failed to establish *Strickland* prejudice.[118] Outside of *Nasby*, the Ninth Circuit has noted that, "[t]o determine prejudice, it is often necessary to authorize discovery and conduct an evidentiary hearing to assess the effect of the attorney's deficient performance."[119] The nature of things that are "often necessary" is that they are sometimes not necessary, and therefore do not necessarily fall within *Nasby*'s "relevant to the [federal court's] adjudication" standard.

This is one of those times. Even if Garner's assertions are true and he legitimately obtained Kessler's credit card and was using it lawfully and that a reasonable investigation by his counsel would have revealed that, he does not explain what that would mean—*i.e.*, how he was prejudiced—because he was not convicted of the possession of a credit or debit card without the cardholder's consent for his possession of Kessler's card. The possession of Kessler's credit card was count 2 of the amended indictment, and count 2 was dismissed prior to trial.[120] His failure to

---

[118] *Guardado v. Nevada Attorney Gen.*, No. 3:10-cv-101, slip op. at 7–11 (D. Nev. Aug. 25, 2017) ("[T]his Court assumes the veracity of [the petitioner's] allegations . . . . Doing so, this Court finds that [the petitioner] is not entitled to habeas relief, and therefore the proceedings are not 'relevant' to its 'adjudication' . . . ."). That court also noted:

> To the sure, the State has a duty to file, and should have filed, the transcripts from the evidentiary hearing as they are relevant to the resolution of Ground 2 under the AEDPA deferential standard of review. *See* Rule 5(c) of the Rules Governing Section 2254 Cases in the United States District Court ("The respondent must attach to the answer parts of the transcripts that the respondent considers relevant.").

*Id.* at 8 n.3. I agree with this assessment of the State's duty in this case as well.

[119] *Detrich v. Ryan*, 740 F.3d 1237, 1246–47 (9th Cir. 2013) (en banc).

[120] *See* ECF No. 14-9 at 2; ECF No. 14-13 at 4.

18

1    adequately claim prejudice is, alone, fatal to his claim.[121]

2         Although Garner does not argue this, Kessler's testimony would not have been very

3    probative as to his conviction for possessing Sarah Jo Bacon's or Michael Lau's credit cards.

4    However, there is some tangential connection between the two, and I will endeavor to both explain it

5    and explain why it does not come near the level of establishing a reasonable probability that the

6    outcome of the proceedings would have been any different.  As the record stands, Garner claims to

7    have told his counsel that Kessler sold him the card—thus, he would not have been using it without

8    Kessler's consent—even though Garner was not convicted of using Kessler's card without his

9    consent, the fact that it appeared as if this was yet *another* instance of him fraudulently possessing a

10   credit might have led a jury to be more likely to believe the evidence pointing to him fraudulently

11   possessing the two credit cards he was convicted for possessing.[122]  But, as briefly mentioned before,

12   one officer testified that the accounts actually linked to the cards were not in Kessler's name—they

13   were in Bacon's and Lau's.[123]  In other words, even if Kessler actually gave Garner his credit card

14   and told him he could use it, that itself was some sort of fraudulent scheme.  And the fact that Garner

15   was convicted for possessing a fake driver's license with Kessler's name, and Garner's picture, on it

16   does not lead someone to believe that Garner was innocent in all of this.  Moreover, Bacon testified

17   that she did not give Garner her consent to use the credit card.[124]  Therefore, on de novo review, I

18   conclude that Garner has not established a reasonable probability of prejudice.

19         Ground 3-3 provides no basis for habeas relief.[125]

20

---

21   [121] His failure cannot be justified by the State not providing me with the transcripts because Garner
     had them, and he was present for the proceedings.  *See* ECF No. 6 at 61; ECF No. 18-1 at 5.

22
23   [122] *See* Nev. Rev. Stat. § 205.690(2).

     [123] ECF No. 14-14 at 76–77.
24
25   [124] ECF No. 15-1 at 69–70.

26   [125] I did not perform the *Nasby* inquiry performed here for Ground 3-1, above, even though that claim
     was one of the three discussed at the evidentiary hearing because the Court of Appeals of Nevada did
     not rely on the evidentiary hearing to reach its conclusions.  *See* ECF No. 17-6 at 6; ECF No. 18-1 at
27   71–72.  I will note that if the court had relied on the evidentiary hearing, I would apply the same
     inquiry applied here and in Ground 3-8, below, to conclude that I did not need the transcripts to deny
28   Garner's claim.

### 4.    Ground 3-4

Garner argues that trial counsel was ineffective for "failing object to counsel during trial to [a detective] repeatedly calling the impounded cards 'fake.'"[126]  The Court of Appeals of Nevada rejected this claim because Garner failed to demonstrate either deficiency or prejudice.[127]  The cards were fake—they said that the cardholder's name was Kessler when they actually belonged to two other people, as undisputedly established by multiple witnesses and unchallenged by Garner, either now or then.[128]  The decision not to contest these characterizations, therefore, was sound trial strategy, beyond reproach from a reviewing court, let alone one subject to the doubly deferential standards of habeas.  Moreover, given that the cards clearly were fake, no prejudice could have resulted.

Ground 3-4 provides no basis for habeas relief.

### 5.    Ground 3-5

Garner argues that trial counsel was ineffective for "failing to object when the jury panel was not polled properly."[129]  The Court of Appeals of Nevada rejected this claim because Garner failed to demonstrate either deficiency or prejudice.[130]  As discussed above, the jury was polled as a whole and they all indicated consent to the unanimity of the verdict.[131]  With nothing more than an assertion that counsel should have objected and otherwise overwhelming evidence of guilt, Garner has failed to establish a reasonable probability that the juror actually voted to acquit him on any of the charges, especially on doubly deferential review.

Ground 3-5 provides no basis for habeas relief.

---

[126] ECF No. 6 at 52.

[127] ECF No. 18-6 at 3–4.

[128] *See* ECF No. 15-1 at 41–71.

[129] ECF No. 6 at 55.

[130] ECF No. 18-6 at 4–5.

[131] ECF No. 15-1 at 108.

**6.      Ground 3-6**

Garner argues that trial counsel was ineffective for "failing to prepare for sentencing."[132]  The Court of Appeals of Nevada rejected this claim because Garner failed to demonstrate either deficiency or prejudice.[133]  It noted that Garner's counsel brought up Garner's drug problems and explained that the criminal history that Garner had was not violent.[134]

Indeed, the transcript of the hearing demonstrates that Garner's counsel was not constitutionally unprepared.  To start the hearing, counsel explained that Garner would prefer that the judge who heard the trial do his sentencing, and made sure that the judge had the opportunity to review the letters that were submitted on Garner's behalf.[135]  Counsel tried to explain that Garner's previous convictions that earned him a habitual-criminal classification (including attempted grand larceny auto in 1992, burglary in 1993 while on probation, burglary in 1996, attempted burglary in 1997, and forgery in 2008, in addition to the fact that immediately after he made bail, he got caught breaking into mailboxes and with a van full of other people's identification cards, credit cards, and medical records) were not violent.[136]  He further discussed the rehabilitative classes that Garner had completed and how Garner wanted to change.[137]  He spent time clarifying the timeline of Garner's prior convictions (and adjudications as a habitual criminal), demonstrating a keen awareness of the crimes and when they occurred.[138]  He explained how Garner developed a drug problem after his foray into the military failed when he was eighteen and discussed time-served credits.[139]  The State

---

[132] ECF No. 6 at 56.

[133] ECF No. 18-6 at 4–5.

[134] *Id.*

[135] ECF No. 15-7 at 2.

[136] *See id.* at 2–6.

[137] *See id.* at 6.

[138] *See id.* at 6.

[139] *See id.* at 6–7.

asked for 10 years to life.[140]

This record adequately supports the Court of Appeals of Nevada's finding that counsel was not deficient and shows that the decision did not involve an unreasonable application of fact, nor was it contrary to, or an unreasonable application of, clearly established U.S. Supreme Court case law. Moreover, Garner fails to point out what else his counsel would have been able to say had he prepared more, and therefore cannot demonstrate a reasonable probability of a lighter sentence. The sentencing judge made clear that he was unimpressed with Garner's criminal history and that, because the single-digit sentences he had received in the past failed to work, the judge felt it necessary to give Garner a tougher sentenced here, and so he got 10 to 25 years.[141]

Ground 3-6 provides no basis for habeas relief.

### 7.     Ground 3-7

Garner argues that trial counsel was ineffective for "failing to motion [sic] to continue the sentencing until the trial judge returned to the bench."[142]  The Court of Appeals of Nevada rejected this claim because Garner failed to demonstrate either deficiency or prejudice.[143]  Indeed, trial counsel asked for a continuance until the first judge returned, but the court declined to wait.[144] Therefore, Garner has failed to demonstrate deficiency.  And he failed to demonstrate prejudice because he does no more than assert that the first judge "may have given a more lenient sentence."[145] Unsubstantiated conjecture does not satisfy the prejudice prong of an ineffective-assistance-of-counsel claim.[146]

---

[140] *See id.* at 4.

[141] *See id.* at 9–10.

[142] ECF No. 6 at 57.

[143] ECF No. 18-6 at 4–5.

[144] ECF No. 15-7 at 1.

[145] ECF No. 6 at 61.

[146] *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989); *United States v. Schaflander*, 743 F.2d 714, 721–22 (9th Cir. 1984).

Ground 3-7 provides no basis for habeas relief.

**8.    Ground 3-8**

Garner argues that trial counsel was ineffective for "failing to remand Mr. Garner into custody prior to trial and/or correctly explain the ramifications to Mr. Garner."[147] The Court of Appeals of Nevada rejected this claim because Garner failed to demonstrate either deficiency or prejudice.[148] It reasoned that, at the evidentiary hearing, counsel testified that he explained the consequences of Garner's custody status and that Garner made the choice to stay in custody and not seek a remand of custody in this matter.[149] As discussed above in Ground 3-3, the State has not provided me with the transcripts of that hearing. And I follow the same approach here as I did for Ground 3-3 in determining whether I need to order the State to provide the transcripts before I rule on the petition.

The claimed prejudice on this ground is that, because Garner's counsel did not tell Garner that if he got arrested on other charges that he committed after being released from custody and was therefore put back into custody on those charges, that he would not get credit for the time he served in jail for those charges; but if he had simply remained in jail the whole time, he would have received credit for time served. Indeed, his only claim of prejudice is that, had he known that time spent incarcerated on others charges would not count towards time served, he would have asked to remain in jail to get credit for time served *because he planned on committing crimes*. In other words, Garner was prejudiced because he took his attorney's advice as a license to commit crime with limited repercussions.

This does not amount to prejudice in the *Strickland* sense. Indeed, it is not "attributable" to Garner's counsel's alleged (and, at this stage, presumed) failure to inform Garner of the consequences of being released. Prejudice is not a simple "but for" test of causation where courts look only to whether the outcome of the proceedings might have been different; rather counsel's

---

[147] ECF No. 6 at 61.

[148] ECF No. 18-6 at 5–6.

[149] *See id.*

deficient performance has to render the outcome of the proceedings "fundamentally unfair or unreliable."[150]  Indeed, the "benchmark" of the *Strickland* inquiry is the "fairness of the adversary proceeding."[151]  Given that "the ultimate focus of the inquiry must be on the fundamental fairness of the proceeding," I must determine "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce *just results*."[152]  Taking into account this focus on achieving "fairness" and "just results," I reject the notion that Garner has demonstrated prejudice.[153]

Ground 3-8 provides no basis for habeas relief.

### 9.     Ground 3-9

Garner argues that appellate counsel was ineffective for "failing to present the District Court's decision to consolidate the cases as a direct appeal issue."[154]  The Court of Appeals of Nevada rejected this claim because Garner failed to demonstrate either deficiency or prejudice.[155] Garner's claim fails in light of the reasons articulated in his companion claim, Ground 3-2.

Ground 3-9 thus provides no basis for habeas relief.

---

[150] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A *Strickland* prejudice] analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."); *Rhode v. Hall*, 582 F.3d 1273, 1280 (11th Cir. 2009) ("The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.").

[151] *Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *see also United States v. Morrison*, 449 U.S. 361, 364 (1981) (noting that the right to counsel "is meant to assure fairness in the adversary criminal process"); *Kimmelman*, 477 U.S. at 374 ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.").

[152] *Strickland*, 466 U.S. at 696 (emphasis added).

[153] *See United States v. Day*, 285 F.3d 1167, 1170 (9th Cir. 2002) ("This case, however, concerns the unusual circumstance where the defendant attempts to demonstrate prejudice based on considerations that, as a matter of law, ought not inform the inquiry." (quoting *Lockhart*, 506 U.S. at 373 (O'Connor, J., concurring))).

[154] ECF No. 6 at 71.

[155] ECF No. 18-6 at 6–7.

**10.     Ground 3-10**

Garner argues that appellate counsel was ineffective for "failing to present the District Court's denial of Mr. Garner's request to continue his sentencing [until the trial judge returned] as a direct appeal issue."[156]  The Court of Appeals of Nevada rejected this claim because Garner failed to demonstrate either deficiency or prejudice.[157]  Garner's claim fails in light of the reasons articulated in Garner's companion claim, Ground 3-7.

Ground 3-10 provides no basis for habeas relief.

**11.     Ground 3-11**

Garner argues that appellate counsel was ineffective for "failing to present the District Court's denial of Mr. Garner's request for his six hundred and ten (610) days for credit time served as a direct appeal issue."[158]  The Court of Appeals of Nevada rejected this claim because Garner failed to demonstrate either deficiency or prejudice.[159]  It held that, because Garner "was in custody for other offenses, [he] was not entitled to additional presentence credit towards his sentence."[160]  Indeed, an independent review of the record confirms that Garner was in custody for another offense, so he was precluded from additional presentence credit.[161]

Ground 3-11 provides no basis for habeas relief.

**12.     Ground 3-12**

Garner argues that "the cumulative effect of the errors of trial counsel constituted ineffective assistance of counsel."[162]  This is not a recognized basis for habeas relief.  Even if it were, as detailed throughout this order, Garner cannot establish prejudice.

---

[156] ECF No. 6 at 72.

[157] ECF No. 18-6 at 7.

[158] ECF No. 6 at 72.

[159] ECF No. 18-6 at 7–8.

[160] *Id.*

[161] *See* Nev. Rev. Stat. § 176.055(1); ECF No. 15-7.

[162] ECF No. 6 at 73.

Generously construing the petition, Garner likely meant to argue that cumulative trial errors violated his right to due process. And the Ninth Circuit has recognized such a claim:

> the Supreme Court has clearly established that the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal. . . . [T]he fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense "far less persuasive" and thereby had a "substantial and injurious effect or influence" on the jury's verdict.[163]

But, as detailed throughout this order, no errors or conflagration of errors claimed by Garner had a "substantial and injurious effect or influence" on the jury's verdict.

Ground 3-12 provides no basis for habeas relief.

**D.      Ground 4**

Finally, in Ground 4, Garner argues that the trial court violated his Sixth Amendment Confrontation Clause rights because the State presented evidence of a credit card with someone else's name on it even though "the State did not produce [the cardholder] at trial."[164]  Garner's claim fails for the reasons I denied Garner's companion claim, Ground 2-2.

Ground 4 also provides no basis for habeas relief.

## IV.   Conclusion

Accordingly, IT IS HEREBY ORDERED that **Garner's petition for a writ of habeas corpus is DENIED** on its merits, and this action is **DISMISSED with prejudice**.[165]

Because reasonable jurists would not find this decision to be debatable or incorrect, IT IS FURTHER ORDERED that a **certificate of appealability is DENIED**.  The Clerk of Court is

---

[163] *Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007) (citations omitted).

[164] ECF No. 6 at 77–78.

[165] A petitioner may not use a reply to an answer to present additional claims and allegations that are not included in the federal petition. *See, e.g., Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).  To the extent that Garner has done so in his federal reply, I do not consider these additional claims and allegations.

directed to **enter judgment, in favor of respondents and against Garner, dismissing this action with prejudice**.

 DATED August 31, 2017.

_____
Jennifer A. Dorsey
United States District Judge